**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| EDWARD ALBERT, | ) | No. EDCV 03-0179 (CW) |
| Plaintiff, | ) | DECISION AND ORDER |
| v. | ) | |
| JO ANNE B. BARNHART, Commissioner, Social Security Administration, | ) | |
| Defendant. | ) | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned Magistrate Judge. Plaintiff seeks review of the Commissioner's denial of disability benefits. As discussed below, the court finds that the Commissioner's decision should be reversed and this matter remanded for payment of benefits.

**I. BACKGROUND**

Plaintiff Edward Albert was born on November 20, 1972, and was twenty-nine years old at the time of his last administrative hearing. [Administrative Record ("AR") 87.] He has a high school education and past work experience as a loss prevention investigator for a retail

...

store. [AR 30.]  He has claimed disability since March 1, 2001, based on his HIV-positive status, cecitis and cyclothymic personality disorder. [AR 55.]

## II.  PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on February 20, 2003, and filed on February 25, 2003.  On July 10, 2003, defendant filed plaintiff's Administrative Record ("AR").  On July 1, 2004, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

## III.  PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for disability insurance benefits ("DIB") on March 26, 2001. [JS 1.]  An administrative hearing was held on April 18, 2002, and a supplemental hearing was held on September 26, 2002, before Administrative Law Judge ("ALJ") Mason D. Harrell, Jr. [Transcript, AR 27, 48.]  Plaintiff appeared with counsel, and testimony was taken from plaintiff, a medical expert, and a vocational expert. [AR 49.]  ALJ Harrell denied benefits on October 7, 2002. [Decision, AR 15.]  When the Appeals Council denied review on January 9, 2003, the ALJ's decision became the Commissioner's final decision. [AR 3.]

## IV.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence.  However, if the court determines that a finding is based on legal error or is not

supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

## V.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

Step one: Is the claimant engaging in substantial

```
        gainful activity?  If so, the claimant is found not
        disabled.  If not, proceed to step two.
             Step two: Does the claimant have a "severe" impairment?
        If so, proceed to step three.  If not, then a finding of not
        disabled is appropriate.
             Step three: Does the claimant's impairment or
        combination of impairments meet or equal an impairment
        listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If
        so, the claimant is automatically determined disabled.  If
        not, proceed to step four.
             Step four: Is the claimant capable of performing his
        past work?  If so, the claimant is not disabled.  If not,
        proceed to step five.
             Step five: Does the claimant have the residual
        functional capacity to perform any other work?  If so, the
        claimant is not disabled.  If not, the claimant is disabled.
```

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288.  If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155

4

education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

**B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

In plaintiff's case, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability (step one), that plaintiff had "severe" impairments, namely HIV infection, cecitis and cyclothymic personality disorder (step two), and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 15.] The ALJ found that plaintiff retained the RFC to perform his past work as a loss prevention investigator (step four). [Id.] Accordingly, the ALJ concluded that plaintiff was not "disabled" as defined by the Social Security Act. [Id.]

**C. PLAINTIFF'S PRESENT CLAIMS**

Plaintiff makes a number of claims challenging the ALJ's decision. The salient ones are that the ALJ erred in rejecting the opinions of plaintiff's treating and consulting physicians in favor of the opinion of the medical expert, and the ALJ erred in his credibility assessment of plaintiff. These claims have merit.

**D. THE ALJ'S REJECTION OF THE TREATING AND EXAMINING PHYSICIANS**

It is well established in this Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v.

---

n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

1  Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating
2  physician's opinion is not, however, necessarily conclusive as to
3  either a physical condition or the ultimate issue of disability."
4  Magellanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  The weight
5  given a treating physician's opinion depends on whether it is
6  supported by sufficient medical data and is consistent with other
7  evidence in the record.  20 C.F.R. § 404.1527.  If the treating
8  physician's opinion is uncontroverted by another doctor, it may be
9  rejected only for "clear and convincing" reasons.  Lester v. Chater,
10 81 F.3d at 830; Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir.
11 1991).  Where the treating physician's opinion is controverted, it may
12 be rejected only if the ALJ makes findings setting forth specific and
13 legitimate reasons that are based on the substantial evidence of
14 record.  Lester, 81 F.3d at 830;  Magallanes, 881 F.2d at 751; Winans
15 v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  See also Benecke v.
16 Barnhart, 379 F.3d 587, 591 n.1 (9th Cir. 2004)(reiterating the well-
17 established rule giving primary weight to the views of treating
18 physicians, absent specific and legitimate reasons for rejecting them
19 that are supported by substantial evidence).
20      The Ninth Circuit has also held that the opinions of an examining
21 physician are entitled to greater weight than those of a non-examining
22 physician. Lester, 81 F.3d at 830. See also Pitzer v. Sullivan, 908
23 F.2d 502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450, 1454
24 (9th Cir. 1984). "As is the case with the opinion of a treating
25 physician, the Commissioner must provide 'clear and convincing'
26 reasons for rejecting the uncontradicted opinion or an examining
27 physician. And like the opinion of a treating doctor, the opinion of
28 an examining doctor, even if contradicted by another doctor, can only

6

be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830-31. (citations omitted).

Here, the record reflects that plaintiff's treating physician, Dr. Warren Howard, opined in July and December 2001 that plaintiff could perform sedentary work and "normal activity with effort, some signs and symptoms of disease," and that in addition to his HIV infection plaintiff had diagnosed mental impairments. [AR 179, 186.] In December 2001, Dr. Howard noted that plaintiff appeared chronically ill and visibly fatigued. [AR 179.] Additionally, in September 2001, consulting psychiatrist Dr. Andrew Rooks opined that plaintiff's "physical status would prevent him from maintaining regular attendance and performing work activities on a consistent basis," although his psychiatric status "probably would not prevent such." [AR 275.][2] Dr. Rook concluded that plaintiff's prognosis was "poor," that plaintiff "will probably become a victim of his HIV status," and that "his depression might not be adequately controlled." [Id.]

In assessing plaintiff's RFC, however, the ALJ adopted the conclusions of the testifying medical expert, Arman Toomajian, and rejected "all other medical source statements to the extent they are inconsistent with" the limitations described by Dr. Toomajian. [AR 14.]  Dr. Toomajian opined that plaintiff could perform light work (i.e., lift ten pounds frequently and twenty pounds occasionally), sit for eight hours during an eight-hour workday, and occasionally bend,

---

[2] Making the same point in slightly different terms, Dr. Rooks also stated: "Though [plaintiff's] psychiatric condition, in and of itself, would not significantly interrupt his ability to complete a normal work week, his physical status might." [AR 275.]

crouch, kneel and crawl. [AR 13, 55-56.]³ Based on this RFC, VE Sandra Fioretti testified that plaintiff could perform his past work as a loss prevention investigator, subject to the condition that plaintiff's impairments would not cause him to miss work more than two or three times per month. [AR 68.]

Under the circumstances here, the ALJ's reliance on the medical expert's testimony to determine that plaintiff had the RFC to perform his past work does not satisfy the Ninth Circuit standards with regard to the evaluation of medical evidence. While acknowledging Dr. Rooks conclusion that plaintiff's physical condition would prevent him from working consistently, the ALJ adopted Dr. Toomajian's RFC assessment without any specific explanation of reasons for discounting Dr. Rooks' opinion regarding plaintiff's limitations.⁴ Similarly, the ALJ did not articulate any specific and legitimate reasons for discounting the limitations of plaintiff's work capacity reflected in Dr. Howard's assessments, and did not even acknowledge the December 2001 assessment, which appears to indicate worsening of plaintiff's symptoms since July 2001.

---

³ Dr. Toomajian also testified that plaintiff could not climb ladders or scaffolds or operate foot controls with his left lower extremity and that he could not perform work at unprotected heights, around heavy machinery, or in extremes of heat or cold. [AR 14, 56.]

⁴ Defendant suggests that Dr. Rooks' opinions as to plaintiff's physical limitations should properly be discredited because Dr. Rooks is a psychiatrist who did not conduct a physical examination of plaintiff, did not review complete medical records, and relied on plaintiff's self-reported medical history. [JS at 10.] Regardless of whether or not these might be specific and legitimate bases for discounting an examining doctor's conclusions, they are not relevant here because the ALJ did not include any such reasoning in the decision. See Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003), citing SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)(reviewing court must judge propriety of agency action solely on grounds invoked by agency).

Moreover, the ALJ also erred in the consideration of a crucial aspect of Dr. Toomajian's testimony regarding how many days of work plaintiff would miss each month. Dr. Toomajian initially stated that plaintiff would "probably" miss work more than three times per month. [AR 59.] Upon further questioning, he stated there would be at least two absences per month. [Id.] After being asked to clarify, he stated that plaintiff would not "necessarily" be absent more than three times per month due to his HIV disease. [AR 60.] After being questioned yet again, Dr. Toomajian said "I can't say really." [Id.] However, the ALJ's summary of this testimony ignores the wavering and indicates only that Dr. Toomajian stated "that it would be unlikely that with [the work limitations noted] the claimant would be absent from work more than 2 or 3 times a month." [Ar 13.] Dr. Toomajian's equivocations do not fairly support such a categorical statement. Given that plaintiff's prospective absences from work were critical to the VE's assessment of his ability to work, Dr. Toomajian's equivocations on this issue should not have been ignored. See Tonapetyan v. Halter, 242 F.3d 1144, 1150-1151 (9th Cir. 2001)(reliance by ALJ on medical expert's opinion, despite expert's equivocations, was erroneous).

**E.   The ALJ'S REJECTION OF PLAINTIFF'S CREDIBILITY**

Although an ALJ is responsible for determining a claimant's credibility, an ALJ may not reject a claimant's testimony without providing "clear and convincing reasons." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). An ALJ must "specifically identify" the testimony found not credible and "explain what evidence undermines the testimony," and the evidence on which the ALJ relies must be "substantial." Holohan, 246 F.3d at 1208; see also Tonapetyan, 242

F.3d at 1148 ("The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements."); Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (quoting Rollins v. Massanari, 261 F.3d 853, 856-857 (9th Cir. 2001)).

Here, plaintiff testified that he has daily diarrhea and stomach aches, suffers from dizziness and nausea, and has headaches bad enough to cause him to lie down at least twice a week. [AR 36, 38-39.] Additionally, he cannot sit for extended periods because he has genital warts on his buttocks and rectum, and he must lie down to relieve the pain. [AR 31, 44.] He further testified that he has lost a substantial amount of weight, has to use the bathroom constantly, and is usually fatigued. [AR 30, 38, 40.] At the September 2002 hearing, plaintiff testified that in the preceding two months he had been hospitalized three times and required convalescent home care twice. [AR 62.] The ALJ found plaintiff's subjective complaints were "somewhat exaggerated," but that "interruption of work once or twice a month is a justifiable limitation." [AR 14.] As reasons for discounting plaintiff's credibility, the ALJ cited inconsistencies between plaintiff's hearing testimony and statements in the medical records regarding his diarrhea and possible drug abuse. [Id.]

These reasons are not sufficiently "clear and convincing" to support the ALJ's rejection of the totality of plaintiff's testimony regarding his subjective symptoms, including critical portions of his

testimony affecting his ability to work on a regular and consistent basis.  First, any alleged inconsistency regarding plaintiff's diarrhea was inconsequential.  The ALJ points to two instances, in March and May 2001, where plaintiff told his physician, Dr. Howard, that he did not have diarrhea. [AR 189, 191.]  However, Dr. Howard's records for later treatment in June and August 2001 document at least two other occasions when plaintiff <u>did</u> report suffering from diarrhea or loose bowel movements. [AR 184, 187.] Additionally, Dr. Toomajian testified that a problem with diarrhea could be associated with the medications plaintiff had been taking. [AR 57-58.] Accordingly, plaintiff's purported lack of consistency regarding this symptom is not a substantial reason to discount his testimony.

Plaintiff's inconsistency regarding his possible drug abuse arises from his denial at the administrative hearing that he ever had a problem with street drugs. [AR 32.] The record indicates that approximately two months after making this statement, plaintiff swallowed a plastic bag containing methamphetamine in order to evade law enforcement. [AR 337.]  This inconsistency presents a more serious problem, and it is reasonable to draw an adverse inference regarding plaintiff's credibility about his drug use on that basis.  On the other hand, it would be unfair to take plaintiff's answer to a single question at the administrative hearing to discredit his entire testimony regarding his symptoms, which are well-documented by the objective medical evidence.  *Cf*. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959. (claimant's dishonesty regarding drug and alcohol use was properly used to discredit her testimony when there were several other factors harming her credibility, including a complete lack of objective medical evidence.)  Viewing the record as a whole,

plaintiff's response to the ALJ's question regarding drug use is not a convincing reason to discount his testimony in total and, thus, the ALJ's credibility determination was erroneous.  Holohan, 246 F.3d at 1208.

### F.     REMAND FOR PAYMENT OF BENEFITS

The decision whether to remand for further proceedings is within the discretion of the district court.  Harman v. Apfel, 211 F.3d 1172, 1175-1178 (9th Cir. 2000).  Generally, where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Harman, 211 F.3d at 1179 (decision whether to remand for further proceedings turns upon their likely utility).  "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Benecke, 379 F.3d at 593, citing Harman, 211 F.3d at 1178; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002); Smolen, 80 F.3d at 1292.

In plaintiff's case, as discussed above, the ALJ erred in rejecting the opinions of Dr. Howard and Dr. Rooks and overstating the opinion of Dr. Toomajian.  Taken together, the physicians' opinions establish that plaintiff would have at least some difficulty in regularly attending work.  VE Fioretti stated that if plaintiff missed work more than two or three times per month, any job he could perform

would be eliminated. [AR 68.]  Moreover, when the portion of plaintiff's testimony regarding his subjective symptoms is credited, the record establishes that, in addition to inability to work consistently, plaintiff cannot sit for extended periods of time and, thus, cannot perform even a sedentary job, as the VE classified plaintiff's past work. [AR 31.]  Even though the VE did not explicitly address all of the precise work limitations established by plaintiff's improperly discredited testimony or the physicians' disregarded testimony, it is clear on the present record that this is a case where plaintiff would necessarily be found unable to perform any gainful employment in the national economy.  <u>Benecke</u>, 379 F.3d at 594. Accordingly, no further proceedings are required, and an order directing an immediate award of benefits is appropriate.  <u>Id.</u>

## VI.  <u>ORDERS</u>

Accordingly, **IT IS ORDERED** that:

1.   The decision of the Commissioner is **REVERSED.**

2.   This action is **REMANDED** to defendant for payment of benefits.

3.   The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: October 26, 2005

_/s/_____
           CARLA M. WOEHRLE
      United States Magistrate Judge